FILED

## UNDERLINE UNITED STATES DISTRICT COURT OF VIRGINIA (Eastern District)
## CIVIL DIVISION

2012 AUG 14  A 11: 50

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Maria Rivas )
7425 Arlington Blvd. # 304 )
Falls Church, Virginia 22402 )
)
    and )
)
Sandra Ventura )
6044 Brook Drive )
Falls Church, Virginia 22044-2601 )
)
    and )
)
Carmen C. Sagastizado )
860 So. Greenbrier Street #315 )
Falls Church, Virginia )
)
PLAINTIFFS )
)
v. )
)
UGL Services Limited )
SERVE: )
CT OPERATIONS SYSTEMS )
1 PORTLAND SQUARE )
PORTLAND, MAINE 04101 )
)
DEFENDANT. )
)
)
)

1: 12cv900
TSE/JFA

---

## COMPLAINT

Now come the Plaintiffs, Maria Rivas, Sandra Ventura, and Carmen C. Sagastizado, by and

through counsel, Glenn S. Wainer, Esq. and file this action at law arising out of gender

discrimination on the basis of hostile work environment sexual harassment, quid pro quo sexual

1

harassment, and retaliation in the course of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* ; violation of Virginia civil law torts of assault, battery, intentional infliction of emotional distress, wrongful discharge in violation of Virginia public policy and negligent retention of employee.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the Plaintiffs' claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3) prohibiting discrimination based on race, color, religion, sex, and national origin.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332 (" the district courts have original jurisdiction over lawsuits where there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00"). This Court has supplemental jurisdiction over the Plaintiffs' common law claims by virtue of the Court's supplemental jurisdiction under 28 U.S.C. § 1367 (a).

3.  UGL Services Limited (UGL) is presently and regularly, conducts affairs and business activities throughout northern Virginia and did so at all times alleged herein.

4.  The causes of action arose from the defendants' acts and omissions in Virginia.

5.  The unlawful employment practices committed by the defendants occurred in this judicial district. The defendant does business in this judicial district and the Plaintiffs live in this judicial district.

6.  Venue over the Plaintiffs' claims under Title VII is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391 (b).

2

## PARTIES

6.     The Plaintiffs, Ms. Maria Rivas, Ms. Sandra Ventura, and Ms. Carmen C. Sagastizado, are female, residents/citizens domiciled in the Commonwealth of Virginia.

7.     Ms. Rivas, Ms. Ventura, and Ms. Sagastizado were employees of UGL Services within the meaning of 42 U.S.C. § 2000e (f). All were employed as cleaners/day porters. Ms. Sagastizado's employment with UGL began in 2006 and remains current. Ms. Rivas' employment with UGL began in January of 2010 and remains current. Ms. Ventura's employment with UGL Services began in 2008. She was effectively terminated by UGL on August 23, 2011.

8.     Defendant, UGL Services is a division of UGL Limited, headquartered in Sydney, Australia, with its principle place of business in 275 Grove Street, Suite 3-200, Auburndale, Mass. 02466.

10.     UGL is an employer within the meaning of U.S.C. § 2000e (b).

11.     UGL is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of the twenty-one or more calendar weeks in the current or preceding year, and during all times alleged herein, within the meaning of 42 U.S.C. § 2000e(b).

## PROCEDURAL BACKGROUND

12.     The Plaintiffs exhausted all administrative remedies required as a prerequisite to filing this civil action.

13.     On October 20, 2011, Plaintiff Rivas timely filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging

discrimination against her by UGL on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended.  **Exhibit 1.**

14.     In October of 2011, Plaintiff Ventura timely filed an administrative Charge of Discrimination with the EEOC alleging discrimination against her by UGL on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended.  Following her unlawful termination by UGL on August 23, 2011, she filed a claim of retaliation with the EEOC.  **Exhibit 2.**

15.     In October of 2011, Plaintiff Sagastizado timely filed an administrative Charge of Discrimination with the EEOC alleging discrimination against her by UGL on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended.  **Exhibit 3.**

16.     More than 180 days have elapsed since the filing of Ms. Rivas and Ms. Ventura's Charge of Discrimination.  The EEOC issued Ms. Rivas and Ms. Ventura Right to Sue Letters on May 16, 2012.  **Exhibit 4.**   Less than 180 days have elapsed since Ms. Sagastizado filed her claim of discrimination on the basis of sex with the EEOC, but the EEOC determined that it was unlikely that they would be able to complete its administrative processing within the 180 days, terminated its processing of the charge and issued an Notice of Right to Sue on May 16, 2012.  **Exhibit 5.**

## Factual Allegations Common to All Counts

17.     Felix Miranda was the immediate supervisor of all three Plaintiffs in 2010 and 2011 for the events complained of herein.  As the immediate supervisor of the Plaintiffs at St. Stephen's and St. Agnes School's located at 400 Fontaine Street, Alexandria, Virginia 22302, he was responsible to ensure that that the Plaintiffs were protected as to their health, safety and

4

security, as were all those employees under his direct supervision while performing cleaning duties at the schools during their scheduled working hours.  He exercised sufficient supervisory authority over the Plaintiffs and therefore qualifies as an agent of UGL within the meaning of Sec. 2000e (b), in that he determined conditions of employment, and provided the Plaintiffs with work assignments.  All the events complained of herein occurred on the premises of St. Stephen's and St. Agnes School during working hours.

18.     From 2010 through 2012, UGL  supervisor, Felix Miranda, acting within the scope of his employment, subjected the Plaintiffs to a hostile work environment in the form of severe and pervasive unwanted, deviant sexual conduct - both verbally and physically, including by way of example, forcing Ms. Ventura to watch pornographic films in which Mr. Miranda appeared  while holding Ms. Ventura hostage in a cleaning closet, as he masturbated, forcibly groping  the Plaintiff's breast;   forcing himself into restrooms  Ms. Rivas  was cleaning alone and exposing himself and attempting to force her to witness him masturbating,  and demanding sexual favors; demanding that Ms. Sagastizado open her legs in the cafeteria while sitting with other persons such that she was exposed, making numerous sexual comments concerning Ms. Ventura, Ms. Rivas, and other female employees of UGL.  Miranda is a predatory harasser who gets his sexual thrills from humiliating his subordinates – a form of sexual extortion.  At all times, the Plaintiffs advised Miranda his conduct was not appreciated that "he was an animal." UGL did not take the complaints seriously and supported the outrageous conduct by doing nothing to protect their employees, the Plaintiffs.  All acts and omissions of said supervisor, Miranda, alleged herein were committed within the scope of his employment by UGL Services

and Miranda's behavior was governed by the corporate governance of UGL, who chose to cover up the numerous outrageous acts.

19.     On numerous occasions in 2010 and 2011, Miranda asked the Plaintiffs for sexual favors, touched them in sexual ways, exposed himself, and generally humiliated the Plaintiffs with exposure to gratuitous sexual acts while taunting and threatening them and insisting there was no course of action available to Plaintiffs because of his position, and his ability to contact any of the Plaintiffs no matter their location.  He openly referred to the Plaintiffs as his "lovers" informing Ms.  Sagastizado that "none of them (the Plaintiffs) made his dick hard," routinely making derogatory sexual remarks to the Plaintiffs.

20.     Felix Miranda's conduct was at all times, severe, repugnant, pervasive, outrageous and unsolicited.

21.     Felix Miranda, continuously and willfully, harassed the Plaintiffs because of their sexual orientation, as female non-English speaking employees by making unwanted and unsolicited sexual advances, fully cognizant that all the Plaintiffs required their employment in order to support their families.

22.     On or about August of 2010 and continuing on separate occasions until August 8, 2011, Felix  Miranda made unwanted advances to Ms. Sandra Ventura of a sexual nature, made lewd and suggestive comments to her, touched her breasts and on several occasions asked her to touch or stoke his penis.  On three separate occasions, the last event occurring in August of 2011, Felix Miranda entered the laundry closet where Plaintiff Ventura would obtain cleaning supplies.  Upon entering the closet, Miranda would willfully detain Ms. Ventura without her consent leaning on the door with his entire body and thereby obstructing her

departure.  When she demanded to leave, he refused.  Instead he forced her to watch pornographic CD's which depicted a nude Felix Miranda having sex with three women, while contemporaneously grabbing Ms. Ventura's breast and exposing his genitals and  masturbating. He would then make comments, such as "have you ever seen one as large as this?" or "it's bigger than your husbands, isn't it?"   He would then order her to stroke his penis and she always refused, demanding to be released.  He would then order that she take her finger and "finger fuck herself" and again the Plaintiff refused.  The behavior would continue for ten to fifteen minutes before Miranda would release Ms. Ventura, despite her protests.  Ms. Ventura always attempted to remove herself from the situation, but could not and all his actions were rebuffed.  Miranda informed the Plaintiff that if she did not watch the video, he would fire her, but if she did as he bid, he may help her with hours or change her hourly wage.  The conduct created an extreme hostile work environment, which she reported to management on two separate occasions, the last being in early August of 2011.  Ms. Ventura first reported the outrageous behavior to Mr. Johnny Rivera, Assistant Manager of the school, and an employee of UGL, reportedly, Mr. Miranda's supervisor.  During her first compliant to Mr. Rivera, he informed her that he believed her allegations as other female employees had made similar complaints of sexual misconduct by Mr. Miranda.  He directly said, "Maria {Rivas} has told me what he did to her." He stated he did not like Mr. Miranda, but urged her not to file a report with Human Resources.  He asked her to give him time and said the behavior would stop. At no point in time did Mr. Rivera provide Ms. Ventura with the UGL sexual harassment policy and inform her at to what rights were as a result of Miranda's actions.  Neither did Rivera offer to remove Miranda from direct contact with Ms. Ventura.   However, the situation only

worsened.  Once the initial complaint was made, Miranda was furious.  Miranda cornered Ms.
Ventura alone and threatened her.  He pointed his finger in her face and screamed at her never
to talk to "Johnny" again.  Mr. Miranda also made clear after she reported the conduct that
there was nothing she could do to stop the behavior because he was in charge and she was
"nothing" and he could always find her.  Further complaints would only result in her
termination, but if she complied with Mr. Miranda's advances, she too may be paid a higher
wage or have to do less work like his "pet" Sandra Sanchez.  As Ms. Ventura refused to
comply, Miranda made stark changes in her work assignments and duties.  Miranda increased
and essentially doubled Ms. Ventura's work load, forcing her to clean the entire gymnasium
floor on her knees.  He would periodically scream at her, calling her by derogatory terms and
subsequently sending to other schools to clean floors to perform other person's duties, such as
cleaning lockers, without notice or adjustments in pay.  Miranda would appear "out of thin air"
thereby terrorizing the Plaintiff leaving her frightened, apprehensive and nervous.  When she
arrived at work, her duties were altered without notice.  None of these new duties predated
her complaints.  Frightened, with no emotional support and worried that Miranda would fire
her or worse perhaps harm her in some way, she again went to Rivera in August of 2011,
reporting that things were much worse, as she had been threatened by Miranda.  She said she
was afraid to return to work because of what Miranda might do to her.  At that point, Rivera
said she should file a complaint with human resources.  Once the complaint was filed, Mary Ray
of UGL came to the school in early August of 2011and interviewed Ms. Ventura, who repeated
her story of sexual harassment.  Again, during the investigation by Ms. Ray, Ms. Ventura was
never apprised of UGL's policy and her rights in regards to a claim of discrimination on the basis

of sex, until after the reported termination of the investigation by Ms. Ray, and then never informed the Plaintiff as to how to handle ongoing contact with Miranda, as UGL took no action to terminate him.  Despite UGL being on notice by Miranda's behavior toward the other complaining women, UGL failed to take adequate remedial actions after the complaints. Two weeks later following Ms. Ray's initial investigation, she returned to the school and informed Ms. Ventura there was no evidence to substantiate her sexual harassment claims against Miranda, but they had indeed found violations on the part of Ms. Ventura that required her immediate termination from St. Stephens and St Agnes School.  UGL falsely reported that Ms. Ventura had admitted to opening a co-workers pay stub in violation of the UGL Services Standards of Conduct.  This was based on a fraudulent claim purposely brought by Miranda against Ms. Ventura, months earlier, when she had been given a co-workers pay stub by another employee establishing that other workers with the same job description and performing the same duties hired after her employment start date were being paid more than Ms. Ventura.  She confronted Miranda, who immediately and falsely accused the Plaintiff of theft, without an investigation or evidence.  Ms. Ventura was generally known not to have access to Miranda's office.  Miranda told her "it was nothing."  No one from UGL ever acted on these allegations until after Ms. Ventura made her complaint of sexual harassment.   These facts were well known to UGL who had months to act on the false charges.  Ms. Ventura was terminated by UGL on August 23, 2011, without notice.  UGL subsequently offered Ms. Ventura placement at another location in Alexandria, but never informed her or offered any guidance as to how she could possibly protect herself from Miranda, as he would continue to have access to her at this location and remains employed by UGL at another school in Alexandria, Virginia, in a

cover-up. Thus, she was frightened for her safety and was thereby discharged on August 23, 2011. As a direct result of the outrageous conduct by Miranda, Ms. Ventura is depressed, fearful, tearful. She continues to suffer nightmares, depression, anxiety, guilt and shame.

23.     On or about May 2, 2011, and continuing into early June of 2011, Ms. Maria Rivas, on at least 3 separate occasions, would find Felix Miranda consistently entering the bathrooms she was cleaning, alone. Miranda would enter the bathrooms, attempt to block her exit and begin screaming at her, demanding that she look at his "chirikin," the term he used to refer to his penis. He would then begin to expose his genitals and masturbate in front of Ms. Rivas, without her consent. Ms. Rivas would loudly protest the behavior and beg him to stop and/or allow her to leave, but Miranda would refuse to vacate the premises and she would finally extricate herself and leave the premises shocked, upset, tearful and frightened. Miranda would then yell at her to "get out" if you do not want to watch. He reported that she should remain in the bathroom if she wanted to remain employed. He taunted her stating she was "illiterate and so I cannot even pay you the same as others our give you a raise." Plaintiff Rivas did not know what to do and became more distraught as the behavior continued, so she finally informed her husband, who proceeded to come to the school to wait outside for her to complete her shifts for protection.    As the outrageous behavior continued, Ms. Rivas went to Miranda's supervisors on at least three separate occasions- specifically after every unsolicited boorish, unsolicited action by Miranda. Initially, she reported the Miranda's actions to Johnny Rivera in June of 2011, the assistant manager of the school. He informed her that Felix Miranda's behavior would stop. However, within one week, Miranda engaged in the exact same behavior again. Rivera informed the Plaintiff that Miranda claimed that Ms. Rivas was

just "making the whole thing up." He did nothing. He failed to inform her of her rights and offered no suggestions as to what to do and how to protect herself. Miranda informed Rivera, he simply wanted to use the bathroom and the Plaintiff was in the way. Ms. Rivas also complained to Felix Tueros, the General Manager of the schools, also an employee of UGL. Ms. Rivas was accompanied by her husband when she met with Mr. Tueros. Tueros provided the Plaintiff with his phone number and said if the behavior recurs, to please contact him, which she did. Ms. Rivas called Tueros following the repeated behavior and he said he would talk to Miranda and inform human resources, but he did nothing. Ms. Rivas finally contacted human resources and reported Miranda on three separate occasions. Ms. Rivas was eventually contacted by human resources who again substantiated Miranda's claim that Miranda has simply needed to emergently use the bathroom and she misunderstood the events. However, when she again contacted Rivera for the second time, he reported that Miranda had admitted to engaging in this outrageous and unwarranted behavior, but still he did nothing. Following her second complaint to Tueros, she became so frightened of Miranda, she could barley return to work out of fear of Miranda, but she could not afford to quit as she requires the income to support her family. Miranda began to stalk Ms. Rivas and intimidate after her complaints. He would scream and yell at her, calling her illiterate and stupid, ridiculing her in the presence of coworkers and teachers in the school. He yelled at her "you have no power" and said she would not get justice because she was illiterate. Miranda altered her work load, and forced to clean new classrooms. Miranda forced her rotate to different buildings on the school premises and would follow her, warning her to never make a report again. He repeated that he could arrange for more money and better working conditions if she remained silent. Miranda would

appear when she was assisting teachers in cleaning designated classrooms and demand to know why she was here instead of performing some other task at another location he had never assigned, without notice.   During the Labor Day holiday in September of 2011, things deteriorated to the point that Miranda presented himself while she was present cleaning a classroom.  Accompanied by his young daughter, Miranda began yelling that he had again changed her duties and that she was no longer allowed to assist teachers in their classrooms. He then shoved, pushed and hit Ms. Rivas in the elbow and chest, without notice or consent. This assault occurred in full view of a teacher, who attempted to intervene and informed Miranda that the Plaintiff had not completed her duties.  He subsequently stalked out of the classroom, leaving Ms. Rivas in fear of her life.  Although she had been informed she would be paid time and a half for working on the holiday, this never occurred.   Miranda informed Ms. Rivas he would never pay her an hourly rate comparable to other employees because she did not attend high school.  For approximated several weeks in mid August of 2011,  Miranda seemed to have disappeared from the school, only to resurface at the school in his normal capacity as the workplace manager of the Plaintiff and UGL employee on August 24, 2011, one day following the termination of Plaintiff Sandra Ventura.  Similarly, Ms. Rivas met with Ms. Mary Ray of UGL many times after making numerous complaints concerning Miranda. However, Ms. Ray simply reported to Ms. Rivas that "Felix Miranda is a good person who has done nothing wrong."   Despite UGL being on notice by Miranda's behavior toward the other complaining women, UGL failed to take adequate remedial actions after the complaints.  Since being subjected to the above outrageous behavior by Miranda, Ms. Rivas is suffering with deep emotional distress.  Miranda remains nearby in Alexandria, still employed by UGL and

12

intermittently appears at her school without notice. She is under a physician's care for the continued actions of Miranda at the school where she works every day. Ms. Rivas has difficulty coping with the situation she finds herself in, with prolonged stress and depression causing deep psychological scars that mirror rape or sexual assault. She requires and is receiving cognitive behavioral therapy with medication. As a direct result of Miranda's actions, Ms. Rivas remains depressed, suffers panic attacks, nightmares, shame, guilt, and post traumatic stress disorder. Once Ms. Rivas made her complaint for discrimination on the basis of sex under Title VII with the EEOC, the EEOC contacted UGL. The Plaintiff believes that the entire school has now been appraised that Ms. Rivas is "mentally disturbed." Ms. Rivas was informed by the Director of the school she has been told by the Plaintiff's coworkers, that Ms. Rivas may "kill or strangle someone because she is on medication." In fact, a coworker, Ms. Rosa Cedilla, is now following the Plaintiff throughout her daily scheduled duties while on the school premises, throwing trash, trash cans and other objects at her, while hurling insults at her. Ms. Cedilla then takes photos of Ms. Rivas and transmits them to her supervisor. Reportedly, Ms. Cedilla has bragged that she is being paid an additional .30 cents/hour to engage in this behavior by UGL. Ms. Rivas is now forced to live in fear of other coworkers and supervisors of UGL, as well as Miranda, who remains in the employ of UGL in another location in Alexandria, Virginia.

24.    In June of 2011, Felix Miranda continuously made derogatory sexual comments to  Ms. Sagastizado without her consent. He cornered the Plaintiff in the cafeteria in June of 2011, demanding that Ms. Sagastizado open her legs in the cafeteria while sitting with other persons such that she was exposed revealing her undergarments and genitalia, while making sexual comments concerning Ms. Ventura, Ms. Rivas, and other female employees of UGL.

13

When she refused to comply, Miranda demanded that she show him respect and do as he ordered. He reported to her that he believed that she, along with Ms. Ventura and Ms. Rivas were his lovers and referred to them as such in Ms. Sagastizado's presence. Miranda also informed Ms. Sagastizado that neither she nor the other Plaintiffs together "could make his dick hard." Miranda gloated that an employee, Sandra Sanchez, was his favorite employee and he makes sure she does little work, forcing her duties onto Ms. Ventura and Ms. Rivas. Shocked by Miranda's behavior, Ms. Sagastizado also reported his behavior to Mr. Johnny Rivera who again failed to take any actions. However, after lodging the complaint, Miranda made a marked change in her working assignments, with increased additional assignments and Ms. Sagastizado remains the only cleaning employee forced to rotate throughout the grade school, middle school and high schools, with her schedule arbitrarily changing without notice. The Plaintiff's allegations were also investigated by Ms. Mary Ray, the UGL investigator, with whom she spoke on at least 3 occasions, in July of 2011. Despite UGL being on notice by Miranda's behavior toward the other complaining women, UGL failed to take adequate remedial actions after the complaints.

25.    The Plaintiffs resisted all sexual advances, verbal and physical and following the complaints and the Plaintiffs' refusals to comply with his sexual demands, Miranda commenced a campaign of retaliatory actions whereby Ventura was terminated without notice.

26.    Despite the barrage of complaints, Miranda continues to work for UGL. Although he was removed to a different school, he continues to make visits to the St. Agnes School, frightening Ms. Ventura and Ms. Sagastizado as they never know when he will appear. He appears on the campus unexpectedly and the Plaintiffs are forced to run and hide. He

would appear out of nowhere and change the Plaintiffs work schedules to ensure they would be performing duties alone, thus making himself available. Ms. Rivas attempted to have her husband present on occasions in order to avoid the unwanted attentions of Mr. Miranda, to no avail.

27.     None of the Plaintiffs were ever advised of their rights and what to do in cases of sexual harassment or the policy of UGL or shown the company handbook. In fact, Miranda purposely obstructed the Plaintiffs rights by informing them that they had no recourse in this country for his actions. It is clear that UGL did not take the complaints seriously and supported the outrageous conduct by doing nothing to protect their employees.

## COUNT 1 HOSTILE WORK ENVIONRMENT SEXUAL HARASSMENT

28.     The Plaintiffs restate and reallege the allegations appearing in paragraphs 1 through 29 in the Complaint as through fully stated herein.

29.     42 U.S.C. § 2000e-2 (a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's….sex…..; or (2) to limit, segregate, or classify his employees….in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's…sex."

30.     Ms. Rivas, Ms. Ventura, and Ms. Sagastizado are all members of a protected group.

31.     Defendant, UGL, by and through its employee, Felix Miranda, violated the Plaintiffs' rights under Title VII (42 U.S.C. § 2000e, et seq.) by engaging in actions and or

activities constituting hostile work environment sexual harassment against each Plaintiff, as alleged above.

32.     These violations by defendant, UGL, were based upon the Plaintiffs' sex, and affected the terms, conditions, and/or privileges of Ms. Rivas, Ms. Ventura, and Ms. Sagastizado's employment.

33.     As a direct and proximate result of the unlawful conduct of defendant, UGL Services, Ms. Rivas, Ms. Ventura, and Ms. Sagastizado  have suffered , and will in the future suffer great damages including front pay' back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish; stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

34.     In addition, the Plaintiffs have incurred and continue to accrue attorneys' fees and other costs related to the prosecution of this action.

## COUNT II QUID PRO QUO DISCRIMINATION

35.     The Plaintiffs, Ms. Ventura, Ms. Rivas, restate and reallege the allegations appearing elsewhere in the Complaint as though fully stated herein.

36.     42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment , because of such individual's ...sex...; or (2) to limit, segregate, or classify his employees...in any way which would deprive or tend to deprive any

individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ...sex."

37.     The defendant, UGL Services Limited, by and through its employee, Felix Miranda, violated the rights of Ms. Rivas and Ms. Ventura, under Title VII by engaging in actions and /or activities constituting quid pro quo harassment.

38.     The Plaintiffs have suffered tangible employment actions, resulting from their rejection of Felix Miranda's sexual harassment. These tangible employment actions consisted of the conduct outlined above, including suffering a loss of income.

39.     These violations affected the terms, conditions, and /or privileges of Ms. Rivas and Ventura's employment, in violation of 42 U.S.C. § 2000e, *et seq.*.

40.     As a direct and proximate result of the unlawful conduct of defendant UGL, Ms. Rivas and Ventura, have suffered, and will in the future suffer, great damages including front pay, back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury, in amounts to be determined at trial.

41.     In addition, the Plaintiffs have incurred and continue to accrue attorneys' fees and other costs related to the prosecution of this action.

## COUNT III RETALIATION

42.     Ms. Rivas, Ms. Ventura, and Ms. Sagastizado restate and reallege the allegations appearing elsewhere in the Complaint as though fully stated herein.

43.     42 U.S.C. § 2000e-3 provides that it is an unlawful employment practice for an employer to "discriminate against any individual …because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

44.     Defendant, UGL, by and through its employees, agents, and officers, including supervisory employees intentionally, willfully, and wantonly retaliated against Ms. Ventura, Ms. Rivas, and Ms. Sagastizado  because of their complaints of the unlawful hostile work environment sexual harassment and or/quid pro quo discrimination, in that, after complaining of sexual harassment in violation of Title VII, the Plaintiffs were subjected to unfair and arbitrary treatment, harassment, and interference with the terms, conditions and/or privileges of their employment subsequent to Ms. Rivas, Ms. Ventura, and Ms. Sagastizado formally complaining of the discriminatory and unlawful treatment of them by UGL, as alleged above. UGL covered up all the complaints of the Plaintiffs.

45.     The actions and/or activities of defendant, UGL,   constitute retaliation for the Plaintiffs' complaints of hostile work environment sexual harassment and/or quid pro quo discrimination, and are in violation of Title VII of the 1964 Civil rights Act.

46.     As a direct and proximate result of the unlawful retaliation by defendant, UGL , the Plaintiffs have suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

47.     In addition, Ms. Rivas, Ventura, and Ms. Sagastizado have incurred and continue to accrue attorneys' fees and other costs related to the prosecution of this action.

## COUNT IV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48.     Ms. Ventura, Ms. Rivas, and Ms. Sagastizado restate and reallege the allegations appearing elsewhere in the Complaint as through fully stated herein.

49.     The workplace manager, Felix Miranda, by his conduct described herein, intended to cause the Plaintiffs severe emotional distress.

50.     Felix Miranda intended his specific conduct and knew, or should have known, that his conduct would likely result in severe emotional distress.

51.     Felix Miranda's conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality.  It was outrageous in that employees should not be compelled to engage in sexual services or forced to witness, or be the object of sexual advances, to or by their workplace manager as a condition of employment.

52.     As a direct result of the sexual advances and actions by the workplace manager described herein, the Plaintiffs were reduced to tears, lost sleep, became anorexic, were nervous, anxious, stressed and distraught. The Plaintiffs remain frightened that Miranda will reappear, which he has done since his transfer to another UGL site in Alexandria Virginia.  All of the Plaintiffs attempted to reduce workplace stress by avoiding Miranda at all costs, avoiding speaking with him and resisted every approach, even after they were informed by UGL that Miranda had done nothing wrong.   Ms. Rivas's stress level is so severe, she remains in continuous and ongoing therapy requiring daily medication under the direct care of a physician for depression and anxiety. Ms. Ventura, remains tearful and depressed, but has been unable

to sustain medical therapy once she was unlawfully terminated by UGL, unable to afford health and feed her children simultaneously.  As a direct and proximate result of Miranda's conduct described herein, the Plaintiffs have suffered and continue to suffer severe emotional distress, including but not limited to humiliation, embarrassment, and indignity to their feelings, all in an amount to be determined at the trial of this matter.

## COUNT V BATTERY

53.     Ms. Rivas and Ms. Ventura restate and reallege the allegations appearing elsewhere in the Complaint as through fully stated herein.

54.     The workplace supervisor, Felix Miranda did restrain Ms. Ventura against her will when he grabbed her breasts.

55.     The workplace supervisor, Felix Miranda, did restrain Ms. Rivas against her will when he shoved and hit her in her chest and elbow.

56.     Felix Miranda, the workplace supervisor caused Ms. Rivas and Ms. Ventura to be wrongfully and painfully touched.

57.     The workplace supervisor caused Ms. Ventura caused Ms. Ventura and Ms. Rivas to be restrained against their will.

58.     The workplace supervisor's acts were intended to restrain Ms. Ventura and Ms. Rivas and such touching was both harmful and offensive.

59.     The workplace supervisor's acts were both the actual and the proximate cause of Ms. Ventura and Ms. Rivas' injuries and damages.

## COUNT VI ASSAULT

60.     Ms. Ventura and Ms. Rivas restate and reallege the allegations appearing elsewhere in the Complaint as though fully stated herein.

61.     The workplace supervisor, Felix Miranda restrained Ms. Ventura against her will and purposely, knowingly, recklessly and wrongfully touched and manhandled Ms. Ventura by grabbing her breasts and by approaching her in a manner calculated to cause a reasonable apprehension of bodily harm.

62.     The workplace supervisor, Felix Miranda attempted to restrain Ms. Rivas against her will and purposely, knowingly, recklessly, and wrongfully hit her in the chest and elbow, attempted to block her exit by approaching her in a manner calculated to cause reasonable apprehension of bodily harm.

63.     The workplace supervisor caused Ms. Ventura and Ms. Rivas to be touched against their will.

64.     The workplace supervisor's acts were intended to restrain and harm Ms. Ventura and Ms. Rivas and such touching and threatening behavior were both the actual and proximate cause of their injuries and damages.

65.     The conduct of the workplace supervisor caused Ms. Ventura and Ms. Rivas to be in reasonable apprehension of offensive conduct and thereby constituted an assault.

## COUNT VII WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

66.     Ms. Ventura restates and realleges the allegations appearing elsewhere in the Complaint as though fully stated herein.

67.    Ms. Ventura was employed by UGL and began working at the locations complained of herein as a cleaner from May 23, 2008 until August 23, 2011.  An implied term of employment with UGL was that she would not be asked or required  to violate Virginia public policy as expressed in Virginia Code § 18.2-344 and Virginia Code § 18.2-345, criminalizing fornication and lewd and lascivious conduct.  Another implied term of her employment was that she would not be assaulted, battered, or molested by members of management in the workplace.  An additional implied term of employment was that she would not be discharged from her employment in violation of the public policy of the Commonwealth of Virginia, nor otherwise wrongfully discharged, despite being an at-will employee.

68.    At all times alleged herein, the Plaintiff performed her duties as an employee in a reasonable manner, loyal, dedicated and satisfactory.

69.    Submission by the Plaintiff to the unwelcome sexual advances, request for sexual favors, and other verbal and physical conduct of a sexual nature by the workplace supervisor, Felix Miranda, was explicitly or implicitly demanded by the supervisor as a condition of the Plaintiff's continued employment with UGL.

70.    The Plaintiff's discharge by her employer was wrongful, because it was also in violation of the public policy of the Commonwealth of Virginia, in that the Plaintiff refused to commit the crimes, in violation of Virginia's public policy as expressed in its criminal statutes, criminalizing fornication and lewd and lascivious conduct.

71.    Said wrongful discharge in violation of public policy caused damage to the Plaintiff, Sandra Ventura.

## COUNT VIII NEGLIGENT RETENTION OF EMPlOYEE FIELIX MIRANDA

72. The Plaintiffs, Ms. Ventura, Ms. Rivas, and Ms. Sagastizado restate and reallege the allegations appearing elsewhere in the Complaint as though fully stated herein.

73. At all times complained of herein, Felix Miranda was the workplace supervisor/manager of the Plaintiffs and an employee of UGL.

74. UGL was placed on notice following the multiple complaints by the Plaintiffs of Miranda's sexual misconduct and outrageous behavior in the workplace and as a result, UGL knew or should have known Miranda was a dangerous employee and was likely to harm others.

75. UGL took no action against Miranda, who they allowed to negligently remain in their employment with ready access to the Plaintiffs and other employees.

76. As a direct and proximate result of the unlawful conduct of defendant, UGL, in negligently retaining Miranda within their employment as a supervisor/manager, Ms. Rivas, Ms. Ventura, and Ms. Sagastizado have suffered injuries and damages, including, but not limited to embarrassment, humiliation, and inconvenience; severe mental anguish; stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, Maria Rivas, Sandra Ventura, and Carmen C. Sagastizado, pray that this Court enter judgment in their favor and against the defendants on the above counts and further:

A. Award on Counts One, Two, and Three judgment in favor of Ms. Ventura and Ms. Rivas and against defendant UGL and award on Counts One and Three in favor of Ms.

23

Sagastizado against UGL, for all relief available under Title VII of the Civil Rights Act of 1964, as amended, including but not limited to back pay, plus compensatory general damages, and front pay in the amount of Three Hundred dollars each ($300,000.00) and attorney fees and costs in this action, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k); and

B.  Ms. Rivas on her common law counts (Counts IV, V, VI, and VIII) for intentional infliction of emotional distress, battery, assault, and negligent retention of employee, the Plaintiff prays for an award of Three Million Dollars ($3,000,000.00) in compensatory damages and Five Million Dollars ($ 5,000,000.00) in punitive damages.

C.  Ms. Ventura on her common law counts (Counts IV, V, VI, VII, and VIII) for intentional infliction of emotional distress, battery, assault, wrongful termination in violation of public policy, and negligent retention of an employee prays for an award of Three Million Dollars ($3,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages.

D.  Ms. Sagastizado, on her common law counts (Counts IV, and VIII) for intentional infliction of emotional distress and negligent retention of an employee prays for an award of Three Million Dollars ($3,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages.

## JURY DEMAND

Trial by jury is demanded.

Respectfully submitted,

/s/ Glenn S. Wainer # 32914

Glenn S. Wainer, Attorney at Law
5827 Columbia Pike, Ste 505
Falls Church, Virginia   22041
Telephone 703-931-6067
FAX 703-671-7691
glennwainer@hotmail.com